SARAH A. CUNNINGHAM, Respondent, *v.* GEORGE F. HEDGE and Others, Appellants.

*Conditional sales — default and waiver of forfeiture by a subsequent acceptance of a payment — a demand necessary to create a new forfeiture.*

Under a conditional sale of a piano the vendee was entitled to possession merely, and until the price was paid it was to remain the property of the vendor, who was authorized to take possession thereof in case of a default in payment therefor. After a default in payment had occurred on the part of the vendee a payment was made by him on the contract, and was accepted by the vendor.

*Held,* that the vendor, by accepting the payment from the vendee, waived the forfeiture, and could not again insist upon the same against the vendee until after a demand for the whole amount due and a refusal to pay it.

APPEAL by the defendants, George F. Hedge and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 27th day of April, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Niagara, and also from an order entered in said clerk's office on the 12th day of May, 1896, denying the defendants' motion for a new trial made upon the minutes.

*Mackey & Draper,* for the appellants.

*W. B. Simson,* for the respondent.

GREEN, J. :

On the 8th day of March, 1892, plaintiff purchased a piano of defendants, who were copartners engaged in the sale of pianos at Buffalo, N. Y. At the time of such purchase a conditional bill of sale was made, bearing date on that day, according to the terms of which plaintiff agreed to pay defendants for the piano the sum of $350 in manner following : " By old piano, $75.00 ; April 10th, 1892, $10.00 ; and quarterly thereafter, commencing June 10th, 1892, at least $25.00, each in advance, with interest, but until the whole amount and interest above named shall be paid the said piano shall remain the property of said G. F. Hedge, Son & Co." In case of default in such payments, the defendants were to have

the right to assume possession of said piano, and all of plaintiff's rights therein were to thereupon cease. The piano was duly delivered and accepted. Payments were made from time to time on this purchase by the plaintiff until she had paid $180 in cash, which, with the $75 allowed her for old piano, amounted to the sum of $255. The time within which payments were to be made expired on the 8th day of September, 1894, at which time a balance of $95 and interest were still unpaid. The plaintiff, still continuing in possession of the property, after such date, and on the 8th day of October, 1894, proceeded to the store of defendants in Buffalo and there saw one of the members of defendants' firm; it was there agreed between the plaintiff and the defendants that, if plaintiff would then pay the sum of ten dollars the defendants would further extend the time for the payment of the balance. The plaintiff, relying upon such agreement, paid the defendants the sum of ten dollars. There is no controversy between the parties as to what took place on the last-named date, except that plaintiff claims that the defendants were to extend the time of payment of the balance remaining unpaid upon the piano for the term of one year, and that she was to pay the sum of twenty-five dollars thereof on the *4th* day of January, 1895. It is claimed on behalf of defendants that they did agree to extend the time of payment upon the contract upon the promise of the plaintiff that on the *1st* day of January, 1895, she would pay the sum of twenty-five dollars; and that, if she paid that amount on that day, they would then see about whether or not they would give further extension. Nothing was done by either of the parties until January 4, 1895. On that day plaintiff's husband went to the defendants ready to pay the sum of twenty-five dollars, which plaintiff claims was the amount which was to be paid on that day. One of the defendants informed the husband of the plaintiff that he was too late; that he had sent to Tonawanda, the residence of this plaintiff, for the piano, and refused to accept the payment. On the last-named day one of the defendants took the piano from the possession of the plaintiff, and the defendants have ever since retained the possession thereof. It is claimed on behalf of defendants that a demand for the balance unpaid upon the contract was made by the person who took the piano from the possession of the plaintiff at the time of taking the same. This is

denied by the plaintiff and her witnesses, who were present at the time the piano was taken, and when it was claimed by the defendants that such demand was made.

The court charged the jury that the agreement of October eighth, between the plaintiff and the defendants, was a valid agreement, and that the payment of the sum of ten dollars by the plaintiff at that time was a valid consideration for such agreement; that, if by the terms of the agreement, the extension was only until the first day of January, as testified by the defendants, then, upon default being made in such payment on that day, the defendants had a right to take possession of the piano; but, if the agreement was that plaintiff should have to, and including, the fourth day of January, as claimed by her, in which to make such payment, and if upon that day she was ready to pay, and did offer to pay, to the defendants the amount which had been agreed to be paid by her on that day, then the defendants were trespassers in taking the piano when they did, and were liable to the plaintiff for the value thereof, less the amount unpaid under and by the terms of the original contract; that the piano was hers during the existence of that contract, and that during its life the defendants had no right to take the piano from her possession. To this charge of the jury the defendants' counsel excepted, and asked the court to charge the jury that the payment by plaintiff, and the acceptance by defendants, of the ten dollars on the eighth day of October was only a recognition of the contract being at that time in force, and that they had the right at any time after that to demand the amount remaining unpaid upon this contract, and, upon her failure or refusal to pay, defendants would be entitled to the possession of the piano; and, further, that the plaintiff had only a special title in the piano, liable to be defeated by the demand of the amount unpaid, and the refusal or failure to pay the amount so remaining unpaid. The court refused to charge as requested, and the defendants duly excepted.

Although the defendants acceded to the arrangement made between the plaintiff and the defendants for an extension of time in the payment of the balance unpaid upon the original contract, and waited three months after the same before taking any action, and although they made no question during that period of time as to the validity of such agreement, they did raise a question as to its

validity upon the trial of this action, and that question must be met and decided.

It appears that the whole amount agreed to be paid by plaintiff under the original contract had become due previous to the ten-dollar payment of October 8, 1894. There was a balance of ninety-five dollars then due and unpaid. By the terms of the contract the plaintiff was entitled, on the 9th day of September, 1894, to take possession of the property. The ten dollars paid by the plaintiff and received by the defendants were so paid and received to be applied upon the original contract. The plaintiff had made default in payments which she had agreed to make. In making the payment of ten dollars she was simply fulfilling to that extent the obligation resting upon her. There was, therefore, no consideration for the agreement to extend the time of payment which was made between the parties on the last-named day. This, however, does not release these defendants from certain obligations resting upon them by reason of receiving a payment upon the contract price of this property after such payments were due.

"Where, upon the conditional sale of a chattel, it is agreed that the vendee is to have possession and pay the price within the time fixed, if after the purchase money has become due and remains unpaid the vendee is still permitted to retain possession, and the vendor receives part payment, this is an assent by the latter to delay and a waiver of any forfeiture and a recognition of the right of the vendee to acquire title by payment of the residue of the purchase money, which right would continue until a request by the vendor for such payment, and a refusal by the vendee" to make such payment. (*French* v. *Row*, 77 Hun, 380, and cases cited.)

These defendants, by accepting payment from the plaintiff after the vendee had made default in the payments contracted to be made, waived the forfeiture, and could not insist upon the same against this plaintiff until they had made a legal demand upon her of the entire amount remaining unpaid upon the contract, and her refusal to pay the same upon such demand.

"A vendor who has waived a forfeiture for non-payment by receiving partial payments from the vendee, after the time of payment prescribed in the contract, cannot suddenly stop short and insist on a forfeiture for the non-payment of the arrears without

previous notice of his intention to do so if the arrears are not paid."
(*French* v. *Row, supra.*)

It is claimed on behalf of the defendants that before repossessing
themselves of the piano in question they made a demand of the
exact amount unpaid upon the contract. This is denied by the
plaintiff, who claims that the property was taken from her posses-
sion on the 4th day of January, 1895, without any demand having
been made upon her, or opportunity having been given to her to
pay the balance remaining unpaid upon the purchase price of the
property. The plaintiff, after such taking, made a tender to the
defendants of the amount then remaining unpaid under the original
terms of the contract. If the plaintiff's contention is true, then the
defendants made themselves liable in trover. If the defendants,
however, after receiving the payment of October 8, 1894, made a
legal demand upon this plaintiff for the balance remaining unpaid,
and gave the plaintiff opportunity to pay such arrears, they were
justified in repossessing themselves of this property.

These were questions of fact which should have been submitted
to the jury upon the trial of this action; upon their determination
rests the right of plaintiff to recover, and the liability, or freedom
from liability, of these defendants. The refusal of the court to
submit those questions to the jury, upon request of the defendants,
was error, which calls for the reversal of this judgment. As there
must be a new trial, another question raised by defendants should be
examined.

One of the grounds of defendants' motion for a new trial was
that the verdict was contrary to the evidence and to the charge of
the court.

The contract price of the piano was $350. The plaintiff had
used the piano for nearly three years at the time the same was taken
by defendants. During that period it had several times been moved
from one house to another. The plaintiff testified that, at the time
it was taken from her by defendants, it was worth $350. Her attor-
ney testified, that shortly after defendants took the piano into their
possession, one of them stated to him that "the piano is in as good
condition to-day as it was the day it first went out of the store."
" He stated to me it was worth three hundred and fifty dollars then,
just as much as it was the day when he took it from the store."

" George F. Hedge told me that day that piano was worth three hundred and fifty dollars, because I gave him to understand I was advancing this money for these people, and he told me then it was worth three hundred and fifty dollars." "I swear Mr. Hedge told me that time that piano was worth three hundred and fifty dollars."

This was all the evidence on the question of the value of the piano given by plaintiff. The defendants denied making the statements attributed to them by plaintiff's attorney, and gave evidence tending to show that the value of the piano, when taken by them, was not to exceed $125. It appears uncontradicted that, intervening the taking of the piano by defendants and the date of the conversation in which the attorney testifies the statements as to its value were made by the defendants, something like thirty dollars had been expended in repairing the instrument. Defendants further testified that it was marred, bruised and generally in bad condition when so taken by them.

The court charged the jury upon the question of damages as follows : " If you find the plaintiff is entitled to recover, ascertain first the value of the piano on the 4th day of January, 1895. You may add interest to that sum to this date. Then you may deduct from that $132.27." The last-named sum is the amount unpaid on the contract and interest to the date of the trial. The plaintiff assented to that deduction as charged, and of that charge the defendants could not complain. The jury, however, ignored the directions of the court. The purchase price of the piano, with interest to the day of trial, amounted to the sum of $373.33. The deduction to be made under the charge of the court was $132.27. The largest verdict, therefore, which the jury, under the evidence and the charge, could render was $241. The verdict actually rendered by the jury was $255, showing conclusively that their verdict was based solely on the amount allowed plaintiff by the defendants for the old piano, $75, and the amount paid in cash by plaintiff upon the contract, $180.

The jury, therefore, rendered a verdict contrary to the evidence and excessive in amount.

It is perfectly apparent, too, that this piano, after three years of service, was not then as valuable as the day it was purchased by the plaintiff.

The defendants would not allow the plaintiff or her representative to see the piano after the same had been taken by defendants from her possession, and, consequently, it was somewhat difficult for the plaintiff to obtain evidence as to its condition and value at the time defendants repossessed themselves of the same, but it appears that evidence, other than that offered at the trial, as to its condition and value, was obtainable and could have been produced. However that may be, it is apparent that the verdict rendered was contrary to the evidence and excessive.

The judgment and order should be reversed and new trial ordered, with costs to abide the event.

HARDIN, P. J., FOLLETT and ADAMS, JJ., concurred; WARD, J., concurred in the result on the ground that the damages are excessive under the charge of the court.

Judgment and order reversed and a new trial ordered, with costs to abide the event.